reIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARYN RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 4730 |
| v. | ) | |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting | ) | Maria Valdez |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision

of the Commissioner of Social Security denying Plaintiff Caryn Ray's claims for

Disability Insurance Benefits. The parties have consented to the jurisdiction of the

United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons

that follow, Plaintiff's motion for summary judgment [Doc. No. 14] is granted and

the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On May 4, 2011, Plaintiff filed claims for both Disability Insurance Benefits,

alleging disability since June 8, 2009. The claim was denied initially and upon

reconsideration, after which Plaintiff timely requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on October 1, 2012. Plaintiff

personally appeared and testified at the hearing and was represented by counsel. Vocational expert Brian L. Harmon also testified.

On November 5, the ALJ denied Plaintiff's for both Disability Insurance Benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.    FACTUAL BACKGROUND[1]

### A.    <u>Background</u>

Plaintiff was born on March 23, 1964 and was 45 years old at the time of the ALJ hearing. Most recently before her alleged date of disability, Plaintiff had worked as a cake decorator and assistant manager for a commercial bakery. (R. 293.)

### B.    <u>Medical Evidence</u>

Plaintiff appears to have reported back pain beginning in 2005. In March of that year, she underwent an MRI, after which she was diagnosed with advanced degenerative disk disease. (R. 551.) She was seen by Dr. Volodimir Markiv in regard to her spinal pain, which was aggravated by lifting, bending forward, and stretching her arms above her head. (R. 528.) At that time, Plaintiff did not have weakness or numbness in legs or arms, and her straight leg-raise test was negative at that time. (R. 528-29.) She was prescribed Norco for pain with the possibility of a branch block

---

[1]  The following facts from the parties' briefs are undisputed unless otherwise noted.

injection and scheduled for follow-up care. (R. 529-30.) She continued to report pain in the following months, and she was additional prescribed Neurontin and Avinza. (R. 522-27.) The medication helped with the pain; however, Plaintiff began reporting a tingling sensation in her right leg. (R. 524.) Through early 2007, Plaintiff had reported improvement in her pain, and she demonstrated negative straight leg-raise tests. (513-21.) By February of 2007, however, the tingling sensation in her arm had continued, and Dr. Markiv found weakness in her right arm. (R. 512.) By November 2007, Dr. Markiv had noted limitation on Plaintiff's cervical spine extension with right lateral rotation. (R. 492.)

Plaintiff underwent a steroid injection in March, 2008, which provided some relief. (R. 486.) She was still working in the bakery but was experiencing pain as well as weakness in her right arm. *Id.* By April, 2008, Plaintiff reported to Dr. Markiv that she had been reassigned to a different job because she was unable to complete the requirements of her former job due to the pain, which was worsening. (R. 484.) Dr. Markiv's physical examination noted that Plaintiff's right head motion was limited due to pain, and that the numbness and weakness in her right arm persisted. *Id.* Dr. Markiv suggested that, if the pain did not decrease with adjustments in medication, Plaintiff should consider radiofrequency ablation. *Id.* In July 2008, Plaintiff's right-sided straight-leg raise test was positive, although her motor function was "relatively preserved" in her lower extremities. (R. 478.)

Plaintiff began seeing Dr. Mark Chang, an orthopedic surgeon, in March 2008. She reported that the pain had begun in 2006 after a work-related injury. (R.

581-82.) Dr. Chang noted the decreased sensation and weakness in Plaintiff's right arm, and found that, as Plaintiff had "failed good efforts at conservative treatment and has radicular pain for almost two years, [he] would recommend consideration for surgery." *Id.* Dr. Chang planned to reevaluate after an updated MRI. *Id.* During 2008, Plaintiff underwent physical therapy for her neck and arm problems. (R. 608-22.) She reported that physical therapy was improving her strength, although she still reported weakness in her right arm. (R. 474.) In August 2008, she again demonstrated a positive right-sided straight leg-raise test, as well as decreased strength in her right foot extension. *Id.*

Plaintiff underwent another steroid injection in December 2008. (R. 464-66.) In the post-operative evaluation, Plaintiff reported a 50 percent improvement in pain intensity in her lumbar spine, although her symptoms otherwise remained the same. (R. 466.) In a November 2008 follow-up, Dr. Markiv found negative straight leg-raise tests bilaterally, as well as preserved motor function in Plaintiff's legs. However, Plaintiff's complaints were aggravated by twisting, reaching, or lifting, and well as complaints of numbness in the hands, continued throughout 2009. (R. 433, 437, 443, 445, 447) After seeing the MRI in May 2008, Dr. Chang recommended further physical therapy, and found that Plaintiff could continue to work under certain restrictions. (R. 583.) However, Dr. Chang recommended that Plaintiff take time off from work to concentrate on physical therapy. (R. 584-85.) Based on that progress, Dr. Chang later recommended that Plaintiff remain off work until she gained more strength and flexibility. (R. 587.)

However, while Plaintiff's neck pain continued to improve, her back pain had worsened. (R. 588.) In September 2008, Dr. Chang noted that flexion in Plaintiff's lower back was limited, and ordered an MRI of the lumbar spine. (R. 588.) That MRI revealed severe disk degeneration, and Dr. Chang he determined that it was not safe for Plaintiff to return to work; instead, he recommended four additional weeks of physical therapy, at the end of which he anticipated she could return to work with light duty restrictions, (R. 589), which was subsequently approved. (R. 590.) After Plaintiff was able to maintain activity at work, Dr. Chang revised her restrictions upward, to a maximum lifting capacity of 25 pounds, in January 2009. (R. 589-95.)

After being released to work on these restrictions, Plaintiff reported that having to drag a box at work had aggravated her problems, although the pain had otherwise continued to be managed with medication. (R. 596.) By June of 2009, however, Plaintiff had reported that she was receiving complaints about her performance at work because she was unable to manage due to her pain. (R. 597.) Her neck and arm pain had increased, and Dr. Chang noted that the pain had worsened to the point that he "may need to consider surgery," despite his earlier statements to the contrary. *Id.* Dr. Chang noted that Plaintiff's "condition has definitively deteriorated," which he attributed to her work. *Id.* He recommended again that she take time off work, and expressed that he would potentially have to revise her work restrictions. *Id.* After nearly a month off from work, Dr. Chang noted that Plaintiff's symptoms had not improved. (R. 599.) He recommended

resuming injection treatments and considering surgery. *Id.* He noted that he did not feel that it was safe for Plaintiff to return to work, even on light duty, and that she should remain off from work for an additional five weeks until reassessment. *Id.* Dr. Chang noted that the goal of the injections was to determine if surgery could be avoided, which he considered preferable. (R. 602.) However, there were apparently problems with insurance approval for Plaintiff's injection treatment, which delayed receipt. (R. 600-06.) By January 2010, Dr. Chang reported that Plaintiff's condition had been worsening. He still recommended injection treatments but, depending on the new MRIs, considered revising the level of injections (R. 607.) As of March 2010, Plaintiff had been terminated from her position, making potential future injections doubtful. (R. 869.)

In June 2010, medical consultant Dr. Frank Jimenez completed an analysis of Plaintiff's RFC. (R. 724-731.) In it, Dr. Jimenez concluded that Plaintiff was capable of occasionally lifting 20 pounds and frequently lifting 10 pounds. (R. 725.) Plaintiff was able to stand for two hours and sit for six hours of an eight hour workday. *Id.* Dr. Jimenez concluded that Plaintiff's allegations as to a 10 pound lifting restriction were "not substantiated by evidence in the file," and that—while there was a statement from Plaintiff's treating physician—it was too old to be considered. (R. 731.)

In July 2011, Dr. Mahesh Shah performed a consultative examination for the state Bureau of Disability Determination Services. (R. 880-83.) In Plaintiff's back, Dr. Shah noted 70 degree flexion, 10 degree extension, and straight leg raising of 45

degrees on the right and 55 degrees on the left. (R. 882.) While Plaintiff did not use any assistive devices for walking, her gait was slow, and "[s]he had difficulty with heel walking and toe walking on the right side," and "was able to squat partially." (R. 882-83.) However, Dr. Shah recorded that Plaintiff's motor strength was 5/5 in upper and lower extremities. (R. 883.)

On August 30, 2011, medical consultant Dr. James Hinchen performed an analysis of Plaintiff's residual functional capacity. (R. 902-09.) Mirroring the findings of Dr. Jimenez, Dr. Hinchen concluded that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. (R. 903.) She could stand for six hours of an eight-hour work day, and could sit with normal breaks for six hours of an eight-hour workday. *Id.* On January 19, 2012, these findings were reiterated in a subsequent RFC determination by medical consultant Dr. Reynaldo Gotanco. (R. 928-35.)

In October 2011, Plaintiff underwent another injection procedure, administered by Dr. Dragan Gastevski. (R. 910.) Dr. Gastevski reported that, after the procedure, Plaintiff had "excellent pain relief this time prior to discharge," and scheduled a second injection. *Id.* In his physical examination, Dr. Gastevski noted strength at 5/5 in the legs, although the straight leg-raise test was positive on the right. (R. 911.) Dr. Gastevski concluded that more injections would likely be needed, and recommended follow-up. *Id.* At a follow-up in November 2011, Dr. Chang noted that Plaintiff reported the same amount of pain, but was "able to manage with home exercises, activity restrictions, and medications." (R. 918.) Her range of

motion was limited, and Dr. Chang recommended following the current course and following up in three months. *Id.* In January, Dr. Chang noted that Plaintiff reported she was "doing the same," with "persistent lower back and leg pain." (R. 938.) He noted that she had difficulty tolerating activities for more than a few minutes at a time, and that her functioning remained very limited. *Id.* Plaintiff's condition was the same at a follow-up in July 2012, and she continued to report she reported significant neck and lower back pain. (R. 959.) In his note, Dr. Chang stated that he was contemplating some further testing in advance of surgical treatment. *Id.*

On September 24, 2012, Dr. Chang filled out a form at which he stated that he believed Plaintiff's condition met the requirements of Listing 1.04(A), and that she was completely disabled. (R. 967-69.) Dr. Chang also stated that Plaintiff was capable of occasionally lifting up to 10 pounds, and frequently capable of lifting only 5 pounds. (R. 968.) He found that she could stand for less than one hour per day, and sit for less than two hours of an eight-hour workday. *Id.*

### C. **Plaintiff's Testimony**

Plaintiff stated that she experienced numbness in her back, as well as arthritis in her hand. The right side of her body would at times become numb, and she would have to wait for sensation to return; Plaintiff stated that her doctors had been unable to identify the source of this problem. (R. 67.) She was taking medication for her back pain, and also was using an "H-wave stimulator," as well as wearing a back brace. (R. 67.)

Plaintiff estimated that she was able to sit for 45 minutes at a time, but would thereafter be required to stand and stretch. She estimated that this stretching process would take about an hour. (R. 67-69.) Plaintiff was able to stand for approximately ten minutes and walk for ten to fifteen minutes. However, after standing she would need to elevate her feet above her waist for "an hour or two." (R. 69.) Plaintiff estimated that she had to elevate her legs in this manner five or six times a day, and that she spent most of her day with her feet elevated. (R. 69-70.) She stated that, other than driving her son a few blocks to school, she was unable to drive because her neck pain made her unable to look to the right. She stated that she did shopping with her husband; while Plaintiff was able to "put a couple things away," (R. 64), her husband would carry the groceries and accompany her to the store. Plaintiff was able to do laundry "on occasion." (R. 64.)

### D. **Vocational Expert Testimony**

The ALJ questioned Vocational Expert ("VE") Brian Harman about a hypothetical person with the same age, education, and work experience as Plaintiff, and a residual functional capacity ("RFC") limiting her to light work. The VE stated that such an individual could not perform any of Plaintiff's past work as she performed it, but the person would be able to perform the work as generally available in the national economy. (R. 79.) The ALJ also found that the hypothetical individual would be capable of performing other jobs existing in significant numbers in the regional economy. (R. 79.) The answer was the same if the individual would be off-task for five percent of the workday. (R. 80.) The ALJ then limited the

hypothetical person to leaving the job for 30 minutes on short notice, once every other day. The VE stated that this would be allowed if the time could be made up in extra hours or during the lunch break. (R. 80-81.) The

The ALJ then referenced Dr. Chang's report, and asked—based on the limitations ascribed in that report—whether the hypothetical individual, if limited to two hours sitting followed by one hour of standing, occasionally lifting 10 pounds and frequently lifting or carrying five pounds, requiring breaks throughout the day on an as-needed basis, could perform the jobs listed earlier. (R. 81-82.) The VE stated that those limitations would preclude all employment. (R. 82.) Plaintiff's attorney then asked if work would be available, at any exertional level, if the hypothetical individual needed to elevate her legs for an hour per day; the VE stated would also preclude all employment. (R. 84.)

### E. **ALJ Decision**

The ALJ analyzed Plaintiff's claim according to the Social Security Administration's five-step process. *See* 20 C.F.R. § 404.1520(a)(4). She found at step one that Plaintiff had not engaged in substantial gainful activity since her onset date of June 8, 2009. At step two, the ALJ concluded that Plaintiff had the severe impairments of degenerative disk disease of the lumbar and cervical spines, obesity, dysthymia/depression, general anxiety disorder, and irritable bowel syndrome. The ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal a Listing. The ALJ then determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). Specifically,

the ALJ opined that Plaintiff would be off-task five percent of the work day, and would be allowed to leave for 30 minutes on short notice approximately every other day, but could make the missed time up over breaks and during lunch. (R. 42.) The ALJ concluded at step four that Plaintiff could perform her past work as cake decorator and bakery manager. Alternatively, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy. Based on these findings, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

## DISCUSSION

### I.    ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work?  20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106–07 (2000). In this circumstance, the district court reviews the decision of the ALJ. *Id.* The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching that decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales,* 402 U.S. 389, 401 (1971), but a "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's

decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008).

## III.    ANALYSIS

Plaintiff challenges the ALJ's decision on a number of grounds. Because the ALJ's determination of whether Plaintiff's impairments met or equaled Listing 1.04(A) was not complete, the case is remanded to the ALJ for further consideration.

### A.    The ALJ's Analysis of Listing 1.04(A)

Plaintiff argues first that the ALJ erred in evaluating whether Plaintiff's impairments met or equaled a listed condition at step three of the analysis. She contends that the ALJ's evaluation was inappropriately truncated and failed to analyze whether her impairment equaled the requirements of Listing 1.04(A). Defendants contend that the ALJ correctly determined that Plaintiff had failed to show that she exhibited motor loss required by the Listing, and thus the ALJ's decision should be affirmed.

"Under a theory of presumptive liability, a claimant is eligible for benefits if he has a condition that meets or equals an impairment found in the Listing of Impairments." *Kastner v. Astrue*, 697 F.3d 642, 646–47 (7th Cir. 2012) (citing 20

C.F.R. §§ 404.1520(d), 404.1525(a) and 20 C.F.R. pt. 404, Subpt. P, App. 1). "Each listing has a set of criteria which must be met for an impairment to be deemed conclusively disabling." *Id.* Listing 1.04(A) requires that the Plaintiff be diagnosed with a disorder of the spine with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

In her analysis explicitly discussing the Listing, the ALJ concluded that Plaintiff had failed to meet or equal the listing because Plaintiff had not "establish[ed] all the requirements of the Listing, including motor loss with atrophy." (R. 41.) Later in the opinion—where the ALJ discussed Dr. Chang's opinion specifically—the ALJ reiterated that she gave "little weight to Dr. Chang's statement that the claimant meets the Listing as there is no evidence of atrophy among other findings," and that "most recent examination findings were generally within normal limits." (R. 50.) Although the ALJ provided an extensive summary of the evidence produced in the case, (R. 42-51), this was the only analysis of the Listing provided.

The Court agrees with Plaintiff that the ALJ, in reaching her conclusion, failed to fully examine whether Plaintiff's impairments met or equaled the Listing, and therefore remand for further consideration is appropriate. The only evidence

the ALJ cited in reaching her conclusion, Exhibit 28F/1, referred to a form prepared by Dr. Chang expressing his opinion that Plaintiff's condition met Listing 1.04(A) by checking a box and explaining with the note that Plaintiff had "right C5, 6 radiculopathies secondary to C4-5, C5-6 disc herniation," and "disc degeneration." (R. 50, 967.) It appears that the ALJ concluded that, because Dr. Chang did not mention motor loss with evidence of atrophy, his conclusion that Plaintiff met the Listing was incorrect.

The ALJ was entitled to ignore Dr. Chang's determination that Plaintiff's impairments met or equaled Listing 1.04(A), as that decision is ultimately reserved to the Commissioner. *See* 20 C.F.R. §404.1527(d)(2); *Molnar v. Astrue*, 395 F. App'x 282, 287 (7th Cir. 2010). However, in reaching her conclusion, the ALJ otherwise failed to adequately discuss the evidence of Plaintiff's impairments related to the Listing, making remand appropriate in this case. Although a finding of motor loss defined by "atrophy with associated muscle weakness or muscle weakness" is one way to satisfy Listing 1.04(A), it is not the only way. Section 1.00(E) states that "[i]nability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(E)(1). And despite the ALJ's conclusion to the contrary, there was evidence in this case from which the ALJ could have concluded that Plaintiff's impairments equaled the Listing in this respect, including weakness in her upper extremities (R. 449, 512) and legs (R. 445, 559), as well as evidence that Plaintiff had difficulty walking on her heels and toes, and was only

able to squat partially. (R. 882-83.) The ALJ did provide an extensive list of this evidence in other parts of her decision. (R. 43-51.) However, other than stating there was no evidence of atrophy, the ALJ did not give any indication as to her analysis of this evidence in relation to the Listings.

While the Court reads an ALJ's decision as a whole and with common sense, *see Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004), in this case the Court cannot determine how the ALJ assessed the evidence relating to the Listing, or whether she properly surveyed the evidence in doing so. The Seventh Circuit has stated that, while an ALJ need not address every piece of evidence in the record, "[i]n considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Kastner*, 697 F.3d at 647 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). In this circumstance, the ALJ's failure to discuss the evidence relating to Plaintiff's motor loss requires remand. *See Turner v. Colvin*, No. 12 CV 10229, 2014 WL 3610887, at *7 (N.D. Ill. July 22, 2014) (discussing evidence of motor and sensory loss). And although the Commissioner discusses this evidence and describes how it fails to prove that Plaintiff's impairments met or equaled the Listing, "[u]nder the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace. On appeal, the Commissioner may not generate a novel basis for the ALJ's determination." *Kastner*, 697 F.3d at 648 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943) and *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir.2010)) (internal citation omitted).

This is not to suggest that, on remand the ALJ must find that Plaintiff's impairments equal Listing 1.04(A). However, the ALJ should perform a more robust analysis of the Listing and address the evidence consistent with its requirements.

## B.   Challenges to the ALJ's RFC Determination

Plaintiff also challenges the ALJ's determination of her RFC in a number of ways. While remand is appropriate based on the issues described above, these contentions are addressed here to provide guidance to the ALJ on remand.

Plaintiff first challenges the ALJ's determination of the impact of her symptoms on her RFC.[2] In evaluating the impact of a claimant's symptoms, an ALJ first considers whether there is an underlying medically determinable impairment which could reasonably produce those symptoms, and if so, then "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *2; *see* 20 C.F.R. § 404.1529(c).

Plaintiff first criticizes the ALJ's use of "boilerplate" language in reaching her decision. Although the Seventh Circuit has repeatedly criticized the use of this language, the language by itself does not "automatically discredit" the ALJ's

---

[2] SSR 96-7p, in effect at the time the parties' submitted their briefs, described this analysis using the term "credibility." *See* SSR 96-7p, 1996 WL 374186. The Social Security Administration has since published SSR 16-3p, which supersedes SSR 96-7p and omits use of the term "credibility," focusing instead on the effect of a claimant's symptoms on his or her RFC. *See* SSR 16-3p, 2016 WL 1119029. For the purposes of this case, however, the differences in the Administration's guidance would not affect the outcome. *See Gonzalez v. Colvin*, No. 14 C 5635, 2016 WL 3213401, at *6 (N.D. Ill. June 10, 2016) (describing similarities in SSR 96-7p and SSR 16-3p).

decision if the decision is otherwise adequately supported. *See Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014).

Plaintiff next challenges the ALJ's reliance on her daily activities in determining her RFC. In her decision, the ALJ stated that "[o]verall the [Plaintiff] has some limitations in activities of daily living, but is not limited to the extent that would be expected of an individual who is unable to engage in a limited range of light work." (R. 48.) In support of this conclusion, the ALJ noted that "she can prepare simple meals, do light laundry and cleaning, and shop for groceries weekly with the help of her husband." *Id.* In addition to her statements about needing to keep her legs elevated during the day, Plaintiff at hearing stated that she could drive her son to school a few blocks away, but could not drive more than that because the problems with her neck made hindered her ability to move her neck. (R. 63-64.) She also testified that was able to do laundry with help from her husband, but that was the extent of her activities. *Id.* at 64.

The ALJ found that, while Plaintiff's activities were limited, she could "prepare simple meals, clean, and shop with assistance" and, based on these activities, Plaintiff could engage in "a limited range of light work." (R. 48.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" 20 C.F.R. § 404.1567(b). A job is defined as "light work" "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." From the ALJ's summary, it is difficult to see how Plaintiff's limited

daily activities would translate into an ability to perform such work full-time, and the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). On remand, the ALJ should explain in greater detail how Plaintiff's limited daily activities translate into such an ability, should she retain this analysis as part of her decision.

Next, Plaintiff argues that the ALJ erred when determining that the fact that Plaintiff failed to receive surgery for her back problems indicated. In doing so, the ALJ noted that, while "Dr. Chang initially discussed the possibility of surgery, . . . there is no indication that it was ever performed." (R. 48.) Plaintiff contends that the ALJ improperly drew a negative inference about the absence of surgery without considering the explanations for Plaintiff's failure to undergo surgery. It is true that, although an ALJ can consider a history of conservative treatment in determining the effects of a claimant's symptoms on her RFC, the ALJ must explore the reasons for that conservative treatment. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); 20 C.F.R. § 404.1529(c)(3)(v). The ALJ, however, failed to do that here. There was evidence in the record from Dr. Chang that surgery was foregone in lieu of less conservative treatment options such as injections and physical therapy, but that those treatments had—by 2012—reached the end of their utility. On remand, the ALJ should evaluate the nature of Plaintiff's treatment in light of its full history.

Plaintiff also argues that the ALJ erred by not incorporating her need to rest and elevate her feet during the day. In her testimony, Plaintiff stated that could stand for about ten minutes at a time. (R. 68.) However, afterward, she testified that she would need to sit down, and sometimes would be required to elevate her feet for an hour or two. (R. 69.) Plaintiff estimated that this happened five to six times per day. *Id.* In her opinion, the ALJ noted Plaintiff's complaint, but did "not include these requirements in the residual functional capacity assessment as they are found nowhere in the medical record." (R. 48.) On this basis, the ALJ found that Plaintiff's elevating her legs was "not medically necessary to control her symptoms." Plaintiff is correct that the ALJ's reliance on a lack of medical evidence requiring this restriction is insufficient to find that it does not apply. "An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain," and "the ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence." *Moore*, 743 F.3d at 1125 (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.2004)) (internal quotation marks omitted). On remand, the ALJ should also clarify her analysis with respect to this point.

Finally, Plaintiff contends that the ALJ erred when she rejected the limitations suggested by her treating physician, Dr. Mark Chang, in favor of those of the agency's medical consultants—Drs. Frank Jimenez (R. 724-731), James Hinchen (R. 900-09), and Reynaldo Gotanco (928-35)—because those opinions were

"consistent with the evidence of record." (R. 50.) Plaintiff contends that, in doing so, the ALJ failed to consider the relative specialties of the physicians in rendering her determination. A treating physician's opinion is entitled to controlling weight when it is "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1529(c)(2); *see Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). When such an opinion is not afforded controlling weight, however, the ALJ must consider a number of factors outlined in the regulation in deciding what weight the opinion is due. *See* 20 C.F.R. § 404.1529(c); *Campbell*, 627 F.3d at 306. One of these criteria is the specialization of the physician, and the regulations state that the Administration will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

Dr. Chang is an orthopedic surgeon specializing in the spine. (R. 968.) Plaintiff contends that Dr. Hinchen is a specialist in geriatrics, and that Dr. Gotanco is a specialist in anesthesiology (she does not address Dr. Jimenez), although she does not direct the Court to anywhere in the record which confirms these assertions. The Court also notes that Plaintiff, in her briefing, does not specify which aspects of Dr. Chang's opinion she believes the ALJ improperly discarded, making a review of this argument difficult. The ALJ was of course under no duty to credit Dr. Chang's statement that Plaintiff was disabled pursuant to the law, as that is an opinion reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1).

However, the regulations nonetheless require an ALJ to consider the specializations of physicians whose opinions she credits, and the Seventh Circuit, in other circumstances, has noted problems with crediting a non-specialist over a specialist in the abstract. *See Goins v. Colvin*, 764 F.3d 677, 679 (7th Cir. 2014). In this case, the ALJ does not appear to have taken the relative specializations of the medical consultants into account in rendering her decision and, on remand, she should do so according to the regulations.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 14] is granted, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**                                      **ENTERED:**


**DATE:**      **August 25, 2016**          _____
                                            **HON. MARIA VALDEZ**
                                            **United States Magistrate Judge**